JP:CHB

M07-1177

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

    -against-

JULIUS VINNING,

              Defendant.

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(T. 18, U.S.C.
§ 922(g)(1))

- - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

    RAYMOND MARTINEZ, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), duly appointed according to law and acting as such.

    Upon information and belief, on or about October 26, 2007, within the Eastern District of New York, defendant JULIUS VINNING, having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess in and affecting commerce a firearm, to wit, a .40 caliber Hi-Point semi-automatic pistol.

    (Title 18, United States Code, Section 922(g)(1))

    The source of your deponent's information and the grounds for his belief are as follows[1]:

---

[1]    Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest JULIUS VINNING,

1.   I have been a Detective with the NYPD for approximately sixteen years, and I am currently assigned to the Gun Enhancement Unit. The factual information supplied in this affidavit is based in part on information from reviews of records of the New York Police Department ("NYPD"), conversations with police officers and other official records of government agencies.

2.   On October 26, 2007, New York City Police Officer Paul Viar and New York City Police Sergeant Sean Downes were on patrol in an unmarked vehicle within the 75th Precinct in Brooklyn, New York. At approximately 12:30 a.m. on that date, Officer Viar and Sergeant Downes observed an individual later identified as the defendant JULIUS VINNING cross the street and step up onto the curb of the sidewalk. As the defendant stepped up onto the curb, Officer Viar observed the defendant grab a large bulge on defendant's right hip.

3.   Officer Viar and Sergeant Downes pulled their vehicle into a nearby parking lot. The defendant then made an immediate right turn into a children's park in the Cyprus Housing Project. Officer Viar then exited the vehicle and followed the defendant on foot into the park. At this time, the defendant looked back at Officer Viar and then grabbed the right side of

---

as described in greater detail below, I have not set forth every fact learned during the course of this investigation.

his pants again.  The defendant began to run.  Officer Viar identified himself as a police officer and ordered the defendant to stop.  The defendant continued to run.

5.   Officer Viar chased the defendant through the park and observed the defendant pull out a firearm from the right side of his pants.  The defendant then continued to run while holding the firearm in his right hand.

6.   While Officer Viar was chasing the defendant, Officer Viar observed both of the defendant's hands meet.  Officer Viar then observed the defendant throw a magazine to the defendant's left and over a fence.  Officer Viar then observed the defendant throw a firearm to the defendant's right and over a fence.

7.   Shortly after Officer Viar saw the defendant throw the firearm and magazine, Sergeant Downes passed the defendant in the police vehicle and apprehended the defendant approximately seventy-five feet from the location where Officer Viar observed the defendant throw the magazine and the firearm.

8.   After the defendant was placed under arrest, Officer Viar recovered a .40 caliber Hi-Point semi-automatic pistol with a .40 caliber round of ammunition in the chamber of the pistol from the backyard of 653 Euclid Avenue.  Officer Viar also recovered a magazine to a .40 caliber Hi-Point semi-

automatic pistol with five rounds of .40 caliber ammunition from the backyard of a residence opposite and adjacent to the rear of 653 Euclid Avenue. Officer Viar recovered the pistol and magazine from the locations where Officer Viar observed the defendant throw the firearm and magazine.

9. After the defendant was placed under arrest and advised of his Miranda rights, the defendant waived his rights and signed a formal waiver of rights. Among other things, the defendant stated, in sum and substance, that he possessed a firearm for protection and was carrying the firearm because he had been shot two weeks ago. The defendant also stated, in sum and substance, that he sold heroin and crack cocaine to support his family and earned approximately $2,500 per week.

10. A criminal history check of the defendant JULIUS VINNING revealed that he was convicted on December 9, 1996, in Albany County Court, New York, for robbery in the second degree, which is a felony punishable by a term of imprisonment of more than one year, and was sentenced to a term of imprisonment of four to twelve years.

11. I have been informed by an ATF Interstate Nexus Expert that the above-mentioned .40 caliber Hi-Point semi-automatic pistol was manufactured outside the State of New York.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for defendant JULIUS VINNING so that he may be dealt with according to law.

RAYMOND MARTINEZ
Detective
New York City Police Department

Sworn to before me this
30th day of October 2007

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK